**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 CR 774-05 |
| | ) | Judge John J. Tharp, Jr. |
| GREGORY CHESTER, *et al.*, | ) | |
| (STANLEY VAUGHN) | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANTS' MOTION FOR LEAVE TO SEEK SUPPRESSION
OF ALL FRUITS OF WARRANTLESS STOPS AND SEIZURES MADE OF
DEFENDANTS BY LAW ENFORCEMENT PURSUANT TO "STOP AND FRISK"
PRACTICES, FIELD INTERVIEWS, OR INVESTIGATIVE ALERTS**

Defendant **STANLEY VAUGHN**, by and through his attorney, **JOSHUA G. HERMAN**, and also on behalf of codefendants **GREGORY CHESTER, ARNOLD COUNCIL, PARIS POE, GABRIEL BUSH, WILLIAM FORD, and DERRICK VAUGHN**, pursuant to the Search and Seizure, Due Process, and Effective Assistance of Counsel provisions of the Fourth, Fifth, and Sixth Amendments to the Constitution of the United States, respectfully requests that this Court grant them leave to seek suppression of all fruits of warrantless stops and seizures made of defendants by law enforcement officers. This motion is made to preserve suppression issues that may require litigation after the government identifies the evidence it seeks to use against defendants. This motion is also made without prejudice to any motions *in limine* that may be filed regarding such evidence.

In support of this motion, Defendant, through counsel, shows to the Court the following:

1.      As has been discussed in a number of contemporaneously filed pretrial motions, this federal Racketeer Influenced and Corrupt Organizations Act ("RICO") conspiracy

prosecution and the separate counts alleging murders that are brought in the Superseding Indictment are the products of a multi-year investigation that is believed to have started with and was cultivated by Chicago Police Department. Indeed, various Chicago Police reports and related records make up the vast majority of discovery produced thus far. Included in those Chicago Police records are documents and reports reflecting numerous police encounters with various defendants at different times over the time period dating back to 2004. Many of these records are known as "contact cards." The contact cards contain information including the date and time of the contact; the address of contact; the "submitting beat" that made the contact; the name of the individual contacted; his date of birth; and the individual's residence and vehicle information. The contact card includes reference to "event" or "RD" numbers, which relate to other police incident reports. The contact card also includes a space for a "narrative" describing the police contact.

2. Thus, each contact card represents an encounter between a police officer and a citizen. It is the defense position that each of these encounters amounted to a seizure—whether it was a traffic stop or simply a police officer walking up to an individual standing on the street and questioning him. Whether or not each seizure was constitutionally justified can only be determined on a case-by-case basis. In many instances, the contact card itself could be the fruit of a Fourth Amendment violation—a document generated by the Chicago Police following an unconstitutional seizure and questioning of a defendant.

3. For example, a contact card was generated on July 1, 2008, at 11:30 pm for Stanley Vaughn, who was a passenger in a vehicle driven by Gabriel Bush. The narrative portion of the contact card simply states: "Above is a Known Gangster Disciple "HOBO" Faction Stopped for F/I." (CPD_004-000109). Chicago Police had absolutely no constitutional

basis to stop Vaughn on this occasion. Tellingly, this particular contact card contains no associated "RD" or "event" number, indicating that the stop was unrelated to any other police event. Should the government attempt to introduce this contact card or any testimony regarding this encounter into evidence, Defendant would first move to suppress both as evidence of an unconstitutional seizure and to preclude its admission for other reasons as well.

4.      Another example of a suspect contact card related to Defendant Stanley Vaughn was one generated on November 24, 2006 at 10:33 pm concerning a stop by Chicago Police at 3500 S. Kedzie, just off the I-55 Expressway. The narrative portion of the contact card simply states: "Above was stopped at above location in regards to A/1 with a gun and above event name check clear." (CPD_112406B-000365-366). It is believed that "A/1" refers to an African-American male. There are no other details provided, or other justification that would support the warrantless seizure of Vaughn for questioning. According to the narrative, Vaughn was stopped simply because there was a report of a male black with the gun at some unspecified and unknown location. The only ostensible connection to Vaughn and that narrative is the fact that he is a black male. The problem here is that the government may very well seek to use this contact card in connection with a murder that occurred that same night at approximately 11:00 pm at 1813 W. 34th Place, approximately 2 miles from where the police stopped Vaughn.[1] The government should not benefit from evidence derived from an unconstitutional stop by police officers.

---

[1] This was the murder of Steven Bogavich. Gabriel Bush was eventually tried in the State court for this murder. (*People v. Bush*, Case No. 08 CR 14942 (Circuit Court of Cook County). On December 3, 2009, Bush was acquitted of all charges after trial. This murder is not listed as an overt act in the Superseding Indictment. Vaughn was questioned but never charged in relation to this case.

5.       It is submitted that litigation of each and every stop Defendants by Chicago Police would, at this time, be premature and unnecessary.[2]  Defendants accordingly file this motion as a placeholder for future suppression motions necessitated by the government's identification of specific stops that may be introduced at trial.   Moreover, Defendants formally lodge their objection to the government using evidence such as "contact cards" at trial.   In anticipation of this litigation, Defendants identify relevant legal standards below.

6.       The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV.   An individual is seized under the Fourth Amendment "whenever a police officer 'by means of physical force or show of authority … in some way restrain[s] the liberty of a citizen. …'" *Acevedo v. Canterbury*, 457 F.3d 721, 724 (7th Cir. 2006) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16 (1968)).   "The fact that the restraint on the individual's freedom of movement is brief makes no difference." *Acevedo*, 457 F.3d at 724.

7.       In context of an investigatory stop, a seizure occurs when one does not feel free to leave or able to terminate the police encounter.  *Brendlin v. California*, 551 U.S. 249, 255 (2007); *Arizona v. Johnson*, 555 U.S. 323, 333-34 (2009).   An investigatory stop is only justified when an officer can "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). Inchoate and generalized suspicions or mere hunches do not satisfy the Fourth Amendment.  *Ybarra v. Illinois*, 444 U.S. 411, 417 (1981).   Rather, an officer's suspicion must

---

[2] For example, each stop by Chicago Police presents its own dynamics, including the specific facts that police claim justified the stop, the duration of the stop, and the evidence, if any, that resulted from the stop.   Individual stops maybe scrutinized under the *Terry* reasonable suspicion standard, or as arrests requiring warrants or probable cause.   Similarly, any seizures based on investigative alerts issued by Chicago Police should be subjected to close scrutiny to ensure that probable cause existed. *See People v. Jones*, 2015 IL App (1st) 142997, P20-P22, 2015 Ill. App. LEXIS 907, *8-9 (1st Dist. 2015)  (noting "troubling" issue of legality of Chicago Police department's policy of issuing investigative alerts.")

be individualized and objectively reasonable. *United States v. Arvizu*, 534 U.S. 266, 273 (2002); *United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011). Further, traffic stops are seizures and only lawful under the Fourth Amendment if "the officer had probable cause to believe that a traffic violation had occurred or reasonable suspicion that a crime was about to be or had been committed. *See United States v. Paniagua-Garcia*, 2016 U.S. App. LEXIS 2800, *4 (7th Cir. Feb. 18, 2016) (*citing Whren v. United States*, 517 U.S. 806, 810 (1996).

8.      The Chicago Police Department has recently come under intense scrutiny for its policies and practices of stopping individuals—primarily minorities—without requisite constitutional justification. In March 2015, the ACLU of Illinois issued a comprehensive report entitled, "Stop and Frisk in Chicago." ("ACLU Stop and Frisk Report"; a copy of the report is available at: http://www.aclu-il.org/wp-content/uploads/2015/03/ACLU_StopandFrisk_6.pdf (last checked March 9, 2016). The Executive Summary of the report is particularly relevant to the types of unlawful stops at issue in this case. It states in relevant part as follows:

> Chicago has failed to train, supervise and monitor law enforcement in minority communities for decades, resulting in a failure to ensure that officers' use of stop and frisk is lawful. This report contains troubling signs that the Chicago Police Department has a current practice of unlawfully using stop and frisk:
>
> • Although officers are required to write down the reason for stops, in nearly half of the stops we reviewed, officers either gave an unlawful reason for the stop or failed to provide enough information to justify the stop.
>
> • Stop and frisk is disproportionately concentrated in the black community. Black Chicagoans were subjected to 72% of all stops, yet constitute just 32% of the city's population. And, even in majority white police districts, minorities were stopped disproportionately to the number of minority people living in those districts.
>
> • Chicago stops a shocking number of people. Last summer, there were more than 250,000 stops that did not lead to an arrest. Comparing stops to population, Chicagoans were stopped more than four times as often as New Yorkers at the height of New York City's stop and frisk practice.

5

ACLU Stop and Frisk Report, pp. 1-2. The ACLU's findings led to an agreement by the Chicago Police Department in August 2015 to conduct an independent evaluation of the practices and procedures related to Chicago Police investigatory stops. A copy of that agreement, called the "Investigatory Stop and Protective Pat Down Settlement Agreement," is available at: www.aclu-il.org/wp-content/uploads/2015/08/2015-08-06-Investigatory-Stop-and-Protective-Pat-Down-Settlement-Agreeme....pdf (last checked March 9, 2016). Former U.S. Magistrate Judge Arlander Keys was engaged to evaluate the City's practices and ensure the implementation of the Settlement Agreement. The ACLU's report, as well as the Chicago Police Department's acquiescence and agreement to evaluate and implement changes regarding its stop and frisk policies and practices support Defendants' positions that many of the stops by Chicago police that may be at issue in this case were unconstitutional. Litigation of the constitutionality of particular stops should be undertaken on a case-by-case basis after the government's identification of specific evidence that it will seek to introduce against Defendants.

WHEREFORE, Defendants seek leave to seek suppression of evidence as may be necessitated following the government's identification of specific stops (whether traffic or otherwise) of Defendants by law enforcement that will be used as evidence at trial.

Respectfully submitted,

/s/ Joshua G. Herman
JOSHUA G. HERMAN,
*Attorney for Defendant Stanley Vaughn*

LAW OFFICE OF JOSHUA G. HERMAN
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
Fax: (312) 663-3707
jherman@joshhermanlaw.com

## CERTIFICATE OF SERVICE

Joshua G. Herman, Attorney at Law, hereby certifies that the foregoing Defendants' Motion for Leave to Seek Suppression of All Fruits of Warrantless Stops and Seizures Made of Defendants by Law Enforcement Pursuant to "Stop and Frisk" Practices, Field Interviews, or Investigative Alerts, was served on March 10, 2016, in accordance with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

/s/ Joshua G. Herman
JOSHUA G. HERMAN,
*Attorney for Defendant Stanley Vaughn*

LAW OFFICE OF JOSHUA G. HERMAN
53 W. Jackson, Blvd., Suite 1650
Chicago, IL 60604
Tel: (312) 909-0434
Fax: (312) 663-3707
jherman@joshhermanlaw.com