IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 13 CR 00774 |
| v. | ) | |
| | ) | Judge John J. Tharp, Jr. |
| GREGORY CHESTER, et al. | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

As explained further in the Statement below, the government's motion to admit evidence of coconspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E) [540] is granted in part and denied in part. Defendants' motion in limine to exclude evidence outside of the charged conspiracy [598] is denied.

## STATEMENT

Pursuant to the Court's order [284], the government has filed a proffer of its evidence supporting the admission of statements of coconspirators in furtherance of the charged conspiracy (the "*Santiago* proffer"). *See United States v. Santiago*, 582 F.2d 1128, 1131 (7th Cir. 1978). The defendants maintain that the *Santiago* proffer is inadequate to support the introduction of coconspirator statements because it: (1) fails to identify every statement the government intends to offer pursuant to Rule 801(d)(2)(E); (2) fails to establish the existence of a conspiracy; (3) includes statements relating to conduct that was not part of the charged conspiracy; (4) includes statements that were not in furtherance of the conspiracy; and (5) violates the defendants' Confrontation Clause rights. In addition, the defendants have moved affirmatively to bar evidence of specific acts they maintain are outside of the scope of the charged conspiracy. These objections are addressed below.

### 1. Identification of Specific Co-Conspirator Statements

In view of the government's acknowledgment that its *Santiago* proffer does not detail each and every proposed coconspirator statement of each witness or document, but rather provides "[a] general framework for the categories of statements," Resp., ECF No. 598, at 102 n.42, there can be no disputing the defendants' contention that the *Santiago* proffer falls short of establishing all of the prerequisites to admission of any particular statement pursuant to Rule 801(d)(2)(E). To admit a statement pursuant to Rule 801(d)(2)(E), "[t]he government must show (1) that a conspiracy existed; (2) that the defendant and declarant were members thereof; and (3) that the offered statement was made during the course of and in furtherance of the conspiracy." *United States v. Hooks*, 848 F.2d 785, 794 (7th Cir. 1988). To the extent that the government's

proffer does not identify a particular statement, it plainly fails to provide a basis for the Court to make a pretrial determination concerning whether the statement was made in furtherance of the conspiracy and, perhaps, as to the declarant's membership in the conspiracy (depending on who the declarant is).

That does not mean, however, that the proffer is wholly inadequate and should be ignored. There is no circuit precedent that requires a pretrial ruling on the admissibility of every statement to be offered pursuant to Rule 801(d)(2)(E). Putting aside any question of the feasibility of a requirement to identify before trial every potential coconspirator statement that the government will seek to introduce at trial pursuant to Rule 801(d)(2)(E) when—as here—a case involves a large number of alleged coconspirators and the trial is expected to last for months, neither *Santiago* nor any of its progeny *requires* any pretrial proffer of evidence at all. Rather, in *Santiago*, the Seventh Circuit held that a trial judge is responsible for making the preliminary determination of the admissibility of coconspirator statements under Rule 104(a). 582 F.2d at 1131. *Santiago* did not require the submission of a pretrial proffer of evidence; rather, our Circuit Court recognized "that the trial judge retains the *option* of conditionally admitting the co-conspirator declaration evidence before the conspiracy has been independently established, but subject to the subsequent fulfillment of that critical condition." *Id*. Although requiring the government to present what has come to be known as a "*Santiago* proffer" is one of the means a district court can employ in making the preliminary admissibility determination required by *Santiago,* it is not the only means. The Seventh Circuit outlined some of the options available in *United States v. Cox*, 923 F.2d 519, 526 (7th Cir. 1991) (internal citation and punctuation omitted):

> the court can rule on each statement as it is elicited based on the evidence the Government has adduced to that point; the court can, even in the absence of a pretrial proffer, conditionally admit the body of coconspirator's statements subject to the Government's eventual proof of the foundational elements (the penalty for not so proving being a possible mistrial); or the court can hold a "full blown" preliminary hearing to consider all evidence concerning the statements. . . . By way of guidance in choosing among these methods, we have suggested that "a preferable procedure would be to at least require the government to preview the evidence which it believes brings the statements within the co-conspirator rule before delving into the evidence at trial.

As the Seventh Circuit has further recognized, the purpose of a *Santiago* proffer is to "help[] streamline trials by permitting the government to introduce co-conspirator testimony at any point during the trial rather than waiting until after it has provided sufficient independent proof of conspiracy." *United States v. Bey*, 725 F.3d 643, 647 (7th Cir. 2013). The most critical function of a *Santiago* proffer, then, is not to provide an advance ruling as to the admissibility of every potential coconspirator statement, but rather to enable the trial judge to make the required preliminary assessment of the sufficiency of the evidence to establish the existence of the charged conspiracy. Such an assessment is particularly important to the efficient conduct of the trial, because without it, a trial court would be forced to conditionally admit *all* alleged coconspirator statements at trial subject to the government's ability to "prove up" the conspiracy.

2

Were the government's evidence to fall short, the Court would then be required to strike every coconspirator statement that had been conditionally admitted, a belated and likely ineffective cure for a foundational defect that led to the erroneous admission of a large number of coconspirator statements. (By comparison, a failure to adequately prove that a particular statement was in furtherance of the conspiracy would affect the admissibility of only that statement).

Here, and as discussed further below, the government's proffer, though not exhaustive, provides a thorough preview of its evidence, one that is more than sufficient to establish, preliminarily, both the sufficiency of its evidence as to the existence of the charged conspiracy and the identity of many members of that conspiracy. To the extent, then, that the defendants' response takes the government to task for failing to identify and explain the basis for admission of every statement it will offer at trial, the criticism is unwarranted.[1]

That said, the fact remains that the *Santiago* proffer does not allow the court to assess the admissibility of *any* statements pursuant to Rule 801(d)(2)(E) because it does not identify such statements with particularity or offer any explanation specific to particular statements as to why they should be deemed to have been made in furtherance of the conspiracy. Accordingly, the Court will require the government, before seeking the admission of any such statements, to identify them, and explain the basis for their admission pursuant to Rule 801(d)(2)(E), at least one week prior to offering them at trial.[2]

### 2. Sufficiency of the Evidence of the Charged Conspiracy

Count One charges the defendants with conspiracy to engage in a racketeering enterprise known as the Hobos, in violation of 18 U.S.C. § 1962(d). The defendants' arguments as to the sufficiency of the proffered evidence to establish the existence of the racketeering conspiracy largely mirror the arguments that the defendants advanced, and the court rejected, in their motion to dismiss Count One for insufficiency. Mot. to Dismiss, ECF No. 345; Order, ECF No. 560. The Court found the allegations of the indictment adequate to plead the existence of a racketeering conspiracy and now concludes that the evidence proffered in support of those allegations is adequate to prove, by a preponderance of the evidence, the existence of that conspiracy.

---

[1] One of the cases cited by the defendants in support of their argument actually endorses the approach the government has taken here. In *United States v. Warner*, 396 F. Supp. 2d 924, 944-45 (N.D. Ill. 2005), the trial judge required the government to present only "a representative sample of the statements about which they [coconspirators] will testify."

[2] The Court contemplates the following process: The government must, by the end of the day on Sunday of each week of trial, specifically identify any additional statements the government intends to offer as coconspirator statements a week later. (If Sunday is Day 1 of Week 1, the government would be required to disclose additional coconspirator statements to be offered during Week 2, *i.e.*, the week that begins on the following Sunday.) That process will allow the defendants the balance of the week to review and assess those statements; any challenges may then be addressed on Friday, and the Court will rule before trial resumes on Monday. If the parties can agree on an alternative schedule or process, however, the Court will consider it.

3

The superseding indictment ("SSI") charges that each of the defendants agreed to conduct and participate in the affairs of an enterprise through a pattern of racketeering. The indictment alleges that the enterprise in question is the Hobos street gang, "that is, a group of individuals associated in fact." SSI ¶ 2. The Supreme Court has defined an enterprise associated in fact as "simply a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 948 (2009). The *Santiago* proffer identifies more than enough evidence to establish preliminarily that the defendants and other members of the Hobos constituted a continuing unit that functioned with a common purpose. The evidence shows that the defendants associated together, traveled together, and acknowledged their affiliation with, and expressly promoted the Hobos enterprise through, tattoos, gang signs, and clothing, among other means. The proffer similarly establishes the defendants' common purpose to promote and enrich the Hobos gang through the commission of drug trafficking, robbery, and violent crimes intended to intimidate rivals, secure the Hobos claim on certain territories, and to obstruct law enforcement efforts.[3] The proffer presents evidence that the Hobos maintained their associations during periods of incarceration with other Hobos who were incarcerated and with those who were not. The proffered evidence shows that the members of the Hobos provided support and assistance to their fellow Hobos during incarceration and upon release. The proffer presents ample proof of the commission, by each of the defendants, of some of these crimes, which is of course evidence of the defendants' agreement to conduct the Hobos' affairs through a pattern of racketeering activity.

As they did in their motion to dismiss, the defendants complain about the "amorphous" structure of the alleged enterprise. It is not surprising, however, that the structure of an informal association in fact lacks many of the attributes of more formal enterprises, and the absence of the structural attributes of a more formal enterprise is not material. *United States v. Olson*, 450 F.3d 655, 664 (7th Cir. 2006) ("We have held that in informal organizations such as criminal groups, there 'must be some structure, to distinguish an enterprise from a mere conspiracy, but there need not be much.'"). What is required is "at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle*, 556 U.S. at 946; *United States v. Hosseini*, 679 F.3d 544, 558 (7th Cir. 2012) (RICO enterprise requires purpose, relationships, and longevity) and as discussed, the proffer presents ample evidence to establish that those features characterized the Hobos gang.

The defendants particularly emphasize the government's acknowledgment that "the Hobos had a relatively horizontal structure" as reflecting that the gang was simply an amorphous and ever-shifting amalgamation of short-term alliances between rivals. Apart from the fact that many formal organizations have primarily horizontal structures (think partnerships),

---

[3] Perhaps there is something innocuous to be inferred from a "Hobo" tattoo proclaiming "the earth is our turf" along with a depiction of a smoking gun and a bag full of cash, but as a preliminary matter it is reasonable to infer that the message that alleged Hobo leader Chester and other defendants advertised with their Hobo tattoos was precisely that the Hobos are a gang that resorts to violence to secure its turf (*i.e.,* an ongoing enterprise conducted through a pattern of racketeering activity).

the characterization of the Hobos as a mere collection of members of rival gangs who occasionally teamed together to commit disparate crimes is quite inconsistent with, and amply belied by, the proffer's evidence of the long-running association and commitment of the defendants to the Hobos association in fact enterprise. When, for example, William Ford tattooed "Hobo for life" on his arm, there seems every reason to conclude that his former allegiance to the Gangster Disciples had taken a back seat to his fealty to the Hobos.

That the defendants had preexisting relationships with other gangs, moreover, does not undermine the evidence establishing the existence of, and their membership in, the Hobos enterprise. Indeed, the fact that each of the defendants worked together despite affiliations with other groups that were antagonistic with each other *strengthens* the import of the evidence that the defendants shared a common purpose, namely promoting the Hobos; without a commitment to a common, unifying, purpose, these defendants presumably would not have banded together for any purpose. The defendants argue that "the evidence will show" that "[t]hese distinct individual and group associations . . . were at times antagonistic to each other." Resp., ECF No. 598, at 9. Perhaps that is so, but the defendants do not identify that evidence presently and the proffered evidence suffices to establish the contrary for purposes of the Court's preliminary determination as to the sufficiency of the evidence establishing the existence of the charged conspiracy.

### 3. Conduct Challenged as outside the Scope of the Charged Conspiracy

Just as they argue that the Hobos enterprise is nothing more than an amorphous collection of individuals, the defendants also argue that many of the crimes committed by those individuals are unconnected. To the extent that conduct that was not in furtherance of the Hobos racketeering conspiracy was the subject of coconspirator statements, they maintain, those statements cannot be admitted pursuant to Rule 801(d)(2)(E).

The defendants challenge the introduction of statements relating to the following conduct on this basis:[4]

*a. Conduct by the "Met Boys"*

The defendants maintain that Rodney Jones, Byron Brown, and Brandon Brown formed the nucleus of a group known as the "Met Boys," and pursued their own agenda of robbery and violence to further their own purposes rather than those of the Hobos. The premise of the argument—that the conduct of the Met Boys served the interests of the Met Boys, or the Hobos, but not both—is flawed. The government is not required to prove that advancing the interests of the Hobos was the exclusive purpose of the defendants when engaged in acts of racketeering, but only that it was one of the purposes of engaging in that conduct. The proffered evidence is sufficient to establish by a preponderance that, whatever their relationships with one another,

---

[4] The defendants also seek the exclusion of other evidence of this conduct, but the Court need not address the defendants' challenge to the admissibility of the other evidence because it concludes that coconspirator statements relating to such conduct are admissible, if demonstrated to be in furtherance of the conspiracy, and because this other evidence does not require a preliminary finding of admissibility under Rule 104.

5

they were also members of the larger association-in-fact that included the defendants named in this case, and that they engaged in criminal conduct consistent with the alleged objectives of the RICO conspiracy, even where those objectives did not directly and necessarily further their own individual interests.[5] Jones, for example, has pleaded guilty to membership in the Hobos conspiracy and is expected to testify that fellow Met Boys Byron and Brandon Brown were also Hobos, that he obtained drugs to sell from other Hobos members, and that he and other Met Boys participated in shootings, murders, and robberies with members of the Hobos enterprise in order to enrich and further the objectives of that enterprise. That the Met Boys had an independent existence does not, in short, demonstrate that they were not part of the association in fact alleged in this indictment or that the conduct in which they engaged that furthered the interests of the Hobos was not sufficient evidence of their agreement to further the Hobos' objectives. *Cf. United States v. Maloney*, 71 F.3d 645, 664 (7th Cir. 1995) (explaining that § 1962(d) provides "the linkage in one proceeding of a number of otherwise distinct crimes and/or conspiracies through the concept of enterprise conspiracy," rendering much of the law distinguishing single and multiple conspiracies irrelevant). Moreover, the fact that the Met Boys often, or even usually, worked together does not negate their participation in the Hobos enterprise. *See, e.g.*, *United States v. Volpendesto*, 746 F.3d 273, 285 (7th Cir. 2014) (rejecting defendant's argument that evidence of participation in the conspiracy was insufficient because he participated only in one form of predicate conduct and committed most of his illegal activity only with two other conspirators).

### b. Conduct reported in statements by Byron Brown

The defendants argue that "any criminal act that is linked to the Hobos by virtue of the testimony of Byron Brown should be barred from trial without persuasive independent proof because of Brown's unreliability as a witness. The simple answer to this point is that the Court has not considered Brown's grand jury testimony in assessing the foundation for the admission of co-conspirator statements (and, as noted in its Response brief (at 11, note 4, ECF No. 651), the government does not rely on that testimony either). By contrast, Brown's non-testimonial statements during the course of the conspiracy are appropriate to consider.

### c. Drug activity outside the "core" drug activity alleged in the indictment

The defendants argue that evidence relating to drug trafficking on occasions and at locations other than as described in the indictment are outside the scope of the alleged RICO conspiracy and should therefore be barred. The implicit premise of this argument—that only acts expressly charged in the indictment are within the scope of the conspiracy—is simply not correct. There is no requirement that every act in furtherance of a RICO conspiracy (or ***any*** such act, for that matter) be described expressly in the RICO conspiracy charge. Further, the claim

---

[5] Further, it is clear that the government does not attribute all actions of the Met Boys to their affiliation with the Hobos. The government's response indicates that it is not seeking to introduce any evidence relating to the murder of Larry Tucker (one of the acts that the defendants have specifically objected to as outside the scope of the Hobos conspiracy) as an act in furtherance of the conspiracy. Similarly, the government notes that it is not introducing evidence of other crimes committed by Stanley Vaughn and Derrick Vaughn or Stanley Vaughn's drug trafficking outside of Chicago.

that the government "provides no basis in its *Santiago* proffer to link these drug possessions to the charged conspiracy" simply ignores the other allegations of the indictment concerning the Hobos' drug trafficking; the indictment is not limited to allegations about specific "drug spots" or "drug lines" but also includes more general allegations that the Hobos distributed drugs "in and around Chicago, Illinois, and elsewhere," that they robbed other drug dealers to obtain drugs to sell, and that they financed their illegal activities with drug proceeds. The link between the activity and the conspiracy is the agreement to conduct the affairs of the enterprise through a pattern of racketeering activity. That means by a course of conduct that will promote the overall objectives of the association in fact; there is no requirement that the conduct serve that purpose exclusively, that it be approved by other members of the association in fact before it is undertaken, or that others even know of the specific actions taken. The defendants may, of course, contest the probative force of this evidence to prove that this activity was in furtherance of the RICO conspiracy, as distinguished from conduct entirely independent of, and therefore of no use to, the conspiracy, but at present the proffered evidence adequately establishes that it is more likely than not that this activity furthered, to some degree, the objectives of the Hobos enterprise.

### d. Evidence involving personal motives

The defendants argue that there is insufficient evidence linking the murder of Terrence Anderson (allegedly committed by Gabriel Bush) and the murder of Keith Daniels (allegedly committed by Paris Poe) to the RICO conspiracy. Indeed, they maintain that there is no link at all. That argument, again, misconstrues the nature of the RICO conspiracy charge. A participant in a RICO conspiracy might commit only those predicate acts of racketeering that serve his own individual interests as well as the interests of the enterprise, but that would make him no less a member of the conspiracy. Again, there is no requirement that a RICO conspirator agree to personally commit any acts, so he may surely be selective in the selection of racketeering acts in which he does participate.

Regarding the Terrence Anderson murder, that defendant Bush had a long-running dispute with Anderson about drug territories does not make evidence of this crime irrelevant to the Hobos' conspiracy; to the contrary, the evidence relating to this murder, which (as proffered) shows that other Hobos including defendants Council and Ford provided assistance to Bush, serves to show that Bush had the support of other Hobos in enforcing his claims to that territory. The evidence of the involvement of other Hobos in Bush's efforts to settle his score with Anderson makes it more likely than not that the murder was within the scope of the conspiracy.

As for the Daniels murder, the defendants essentially concede that the evidence pertaining to that murder is sufficient to show an agreement between Poe and Chester, who was charged and jailed based on Daniels' work as a cooperator, but they argue that such evidence is far removed the other defendants, who were incarcerated or unavailable to participate. That is true enough, but it is nevertheless sufficient to show that there is an adequate basis to conclude that Daniels was murdered in an effort to prevent him from testifying about Chester's drug trafficking activities—activities that were in furtherance of the Hobos' RICO conspiracy (as explained in the Court's separate ruling on the parties' respective motions concerning Daniels' statements). There is ample evidence in the government's proffer to establish that Chester was the principal leader of the Hobo's association in fact. That another member of the conspiracy

murdered Daniels to prevent him from testifying against a leader of the enterprise qualifies as a sufficient basis to conclude that the murder furthered the objectives of the Hobos enterprise, even if some of Hobos knew nothing at all about it before it occurred.

### e. Other random acts of violence unconnected to the Hobos

For the same reasons, the defendants' argument that various other acts by the defendants are the acts of individuals outside the scope of the conspiracy fail. An act by an individual that furthers the scope of a conspiracy that the individual has agreed to join does not fall outside the scope of that conspiracy simply because the individual took the act on his own initiative, or in part to serve his own ends in addition to those of the conspiracy, or without the authorization or specific approval of others in the conspiracy. While Poe's alleged act in kidnapping someone to gain leverage to secure the return of handgun, for example, undoubtedly served his individual interest, it also served the interest of the conspiracy because it exemplified the Hobos' use of force and intimidation to advance their enterprise and helped to arm a participant in the conspiracy. Robberies committed by members of the conspiracy also served the interests of the conspiracy because they enriched those members, supplied them with drugs to sell, and further intimidated rivals (or so there is an adequate basis to conclude based on the government's proffer).

### 4. Specific statements challenged as not in furtherance of the conspiracy

The defendants challenge the admissibility under Rule 801(d)(2)(E) of a number of specific statements, identified below, that are referenced in the *Santiago* proffer. As indicated, the *Santiago* proffer fails to include sufficient information about these particular statements to permit a ruling *in limine* regarding their admissibility; accordingly, the government will be required to identify and supplement the information provided regarding these statements in accordance with the information set forth in footnote 2, above.

### a. Recorded conversation between CI-3 and William Ford:

The government has not yet explained the context of this conversation or identified which of the statements in this recording are in furtherance of the conspiracy; accordingly, the Court lacks an adequate basis to assess their admissibility under Rule 801(d)(2)(E). These statements are therefore subject to the Court's requirement for notification set forth in footnote 2 of this Order.

### b. Recorded conversations between Derrick Vaughn and a CI in Nov/Dec 2013:

The government has not yet explained the context of these conversations or identified the specific statements in furtherance of the conspiracy; accordingly, the Court lacks an adequate basis to assess their admissibility under Rule 801(d)(2)(E). These statements are therefore subject to the Court's requirement for notification set forth in footnote 2 of this Order.

### c. Recorded conversations between Byron Brown and CI-1 in March 2008

The defendants argue that statements in a recorded conversation by Byron Brown with CI-1 are not admissible because they were not in furtherance of the conspiracy or against

8

Brown's penal interest. These statements are the subject of a separate motion in limine by the government (see ECF No. 590-14) and have therefore been addressed in detail by the parties. The statements (also set forth in the *Santiago* proffer at 84-86) relate primarily to two different episodes: the earlier portion of the conversation concerned the September 2007 murders of Antonio Bluitt and Gregory Neely in retaliation for the shooting of Gregory Chester in June 2007. As detailed in the *Santiago* proffer, Hobos Council, Bush, Derrick Vaughn, Stanley Vaughn, Rodney Jones and others orchestrated a drive by shooting at a funeral that left Bluitt and Neely dead. After discussing aspects of that event, the conversation moved to a discussion of the November 2007 murder of Eddie Moss, an act alleged to have been retaliation against a rival gang (the "Row Row Gangster Disciples) for their shooting of Rodney Jones. Jones is expected to testify that, while hospitalized as a result of that shooting, he received visits from a number of the Hobos, including defendants Bush, Council, Derrick Vaughn, Stanley Vaughn, and William Ford, as well as Jones' fellow "Met Boys" Brandon and Byron Brown. Jones is expected to testify that the Hobos told him that they shot up a van, shot a person on a porch, and also shot a person that they followed out of the hospital.[6] According to Brown's statements on the recording, shortly thereafter he and other unidentified individuals went back to the Row Row Gangster Disciples' territory, found Moss and executed him (having apparently mistaken Moss, a semi-pro basketball player, for someone else).

Some four months later, Brown recounted these events to CI-1. The government maintains that these statements are admissible as coconspirator statements for at least two reasons. First, it argues that Brown's statements qualify as statements made "to update and inform others about the progress of the conspiracy." The cases that the government cites for that proposition, however, are not so broad; those cases involve statements made to inform *other members of the conspiracy* about its status and progress; in each, the witness to the coconspirator statements at issue was a member of the conspiracy. *See, e.g.*, *United States v. Curtis*, 37 F.3d 301, 303-04, 307 (7th Cir. 1994); *United States v. Alviar*, 573 F.3d 526, 545 (7th Cir. 2009); *United States v. Rea*, 621 F.3d 595, 605 (7th Cir. 2010). None of the cases involved statements made by a conspirator to a non-conspirator. Neither the government's *Santiago* proffer nor its motion in limine identifies CI-1 as a coconspirator,[7] and the government's submissions fail to explain adequately how Brown's statements about the conspiracy furthered the interests of the conspiracy; a non-conspirator would have no need of updates about the conspiracy and, indeed, without some reason to believe that the witness would keep the information confidential, the statements confessing to the involvement of members of the conspiracy in multiple murders could well be construed to harm the conspiracy by creating a risk that the conspiracy would be revealed to law enforcement or to rivals. Accordingly, based on the information provided to date, this rationale fails to establish that Brown's statements to CI-1 were made in furtherance of the Hobos conspiracy.

---

[6] Such statements, though not specifically a subject of the government's motion *in limine*, plainly qualify as admissible coconspirator statements as they were offered to Jones to let him know that the Hobos were standing behind him and retaliating against those who had attacked one of their members.

[7] The *Santiago* proffer identifies CI-1 only as someone who was cooperating with law enforcement; it provides no information about his association with the Hobos, if any. The motion *in limine* does not provide any additional information about CI-1.

9

The government also asserts that Brown's statements qualify as statements in furtherance of the conspiracy because they were made to enhance the reputation of the person speaking (Brown) as well as that of the conspiracy (Hobos) and others within the conspiracy. Again, however, the cases cited by the government do not support its broad proposition. *Curtis*, 37 F.3d at 307, does not address this purported basis for admission at all, and *United States v. Stephenson*, 53 F.3d 836, 845 (7th Cir. 1995) involved statements by one coconspirator to another. Again, the government has failed even to identify CI-1 as a conspirator, much less proffer any evidence of that fact. In the absence of case law suggesting that bragging to non-conspirators somehow can be deemed to further the objectives of a conspiracy, or a basis to conclude that CI-1 was a member of the Hobos conspiracy, the government's second proposed ground for admission of Brown's statements also falls short.

To be sure, "the fact that one party to the conversation was a government informant does not preclude the admission of the conspirator's statements under Rule 801(d)(2)(E)." *United States v. Mealy*, 851 F.2d 890, 901 (7th Cir. 1988). *See also United States v. Mahkimetas*, 991 F.2d 379, 383 (7th Cir. 1993) ("As [the informer] was acting on behalf of the government there is no question that his statements cannot be admitted under Rule 801(d)(2)(E)."). But in cases so holding, like the ones cited here, the government informant had been and ostensibly still was a member of the conspiracy when the coconspirator statements were made; here, by contrast, the government has pointed to no case holding that its asserted bases for admitting Brown's statements apply where the witness to those statements had not been a coconspirator.

All this is not to say that there are no such cases, or that the government cannot yet establish the admissibility of Brown's statements during this recorded conversation under Rule 801(d)(2)(E). But it has failed to provide an adequate basis for their admission as coconspirator statements thus far.

The government also maintains that Brown's statements during this conversation are admissible under Fed. R. Evid. 804(b)(3) against other members of the conspiracy as statements by Brown against his interest. The Seventh Circuit has repeatedly held that statements that are deemed sufficiently reliable to qualify for the statement against interest exception to the hearsay rule may be used for any purpose, including as substantive evidence of a co-defendant's guilt. *See, e.g.*, *Volpendesto*, 746 F.3d at 288; *Watson,* 525 F.3d at 586-88 (evaluating a co-conspirator's hearsay statement under Rule 804(b)(3) to determine whether it was properly admitted against the appealing defendant); *United States v. Hamilton,* 19 F.3d 350, 354–57 (7th Cir.1994) (rejecting an argument that admitting a co-defendant's hearsay statement against a non-declarant defendant under Rule 804(b)(3) constitutes a *Bruton* violation); *United States v. York*, 933 F.2d 1343, 1364 (7th Cir. 1991) ("So long as the incriminating and inculpatory portions of a statement are closely related, if the circumstances surrounding the portion of a declarant's statement inculpating another are such that the court determines that the inculpatory portion of the statement is just as trustworthy as the portion of the statement directly incriminating the declarant, there is no need to excise or sever the inculpatory portion of the statement."). But here, the statements identified in the government's motion do not implicate Brown in the drive-by shooting of Bluitt and Neely (nor do they implicate any other specific individuals), and do not implicate anyone else specifically in the Eddie Moss execution, so there is no basis for their admission against others on the basis of Rule 804(b)(3).

      *d. Testimony of CI-1 about statements by CD-1 and Gary Chester while incarcerated*:

The government has not offered an argument as to why these statements are in furtherance of the conspiracy; accordingly, the Court lacks an adequate basis to assess their admissibility under Rule 801(d)(2)(E). These statements are therefore subject to the Court's requirement for notification set forth in footnote 2 of this Order.

      *e. Statements by Paris Poe to CD-1 during van ride to court:*

The government has not offered an argument as to why these statements are in furtherance of the conspiracy; accordingly, the Court lacks an adequate basis to assess their admissibility under Rule 801(d)(2)(E). If they are to be offered on that basis, these statements are therefore subject to the Court's requirement for notification set forth in footnote 2 of this Order.

      *f. Gregory Chester interview on 10/22/16*

The government has not offered an argument as to why any statements by Chester during an interview by law enforcement were in furtherance of the conspiracy (and it seems doubtful that the government intends to offer such statements pursuant to Rule 801(d)(2)(E). If they are to be offered on that basis, however, these statements are subject to the Court's requirement for notification set forth in footnote 2 of this Order.

      *g. Keith Daniels' statements to law enforcement*

The statements of Keith Daniels to law enforcement are not offered as coconspirator statements but rather as statements of Daniels that are admissible pursuant to Fed. R. Evid. 804(b)(6). The admission of these statements on that basis is addressed in a separate order.

      *h. Council's statements to his mother following murder of Keith Daniels*:

The government has not offered an argument as to why these statements are in furtherance of the conspiracy; accordingly, the Court lacks an adequate basis to assess their admissibility under Rule 801(d)(2)(E). If they are to be offered on that basis, these statements are therefore subject to the Court's requirement for notification set forth in footnote 2 of this Order.

    **5. Confrontation Clause**

The defendants also argue that introduction of any statements under Rule 801(d)(2)(E) would violate their rights under the Confrontation Clause. That is simply wrong. Only "testimonial" statements implicate the Confrontation Clause, *Crawford v. Washington,* 541 U.S. 36 (2004), and a statement made in furtherance of a conspiracy is, by definition, not a testimonial statement. *United States v. Nicksion*, 628 F.3d 368, 374 (7th Cir. 2010) (rejecting confrontation clause claim as to introduction of coconspirator statements because such statements are not testimonial); *United States v. Hargrove*, 508 F.3d 445, 448 (7th Cir. 2007) (coconspirator statements are neither hearsay nor testimonial). Further, even if a hearsay statement does not qualify for admission under Rule 801(d)(2)(E), or any other hearsay exception, that fact alone would not create a Confrontation Clause issue because, again, only testimonial statements

implicate the right to confront a witness. *Crawford,* 541 U.S. at 68 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law—as . . . would an approach that exempted such statements from Confrontation Clause scrutiny altogether."); *see also Volpendesto*, 746 F.3d at 289 ("[a] statement unwittingly made to a confidential informant and recorded by the government is not 'testimonial' for Confrontation Clause purposes.").

As for the defendants' warning that, "should any statements of co-defendants be admitted as co-conspirator statements over defense objection, Defendants may very well be compelled to file motions for severance to protect their respective rights and interests," Resp., ECF NO. 598, at 23, it suffices to say that the defendants may file, at any time, any motion they see fit. One such motion has been filed already, with defendant Gregory Chester. Mot. to Sever Based on *Bruton* violation, ECF NO. No. 768. The Court will address any such motions, including any threshold issues as to their timeliness, if and when they are made.

Date: September 6, 2016

John J. Tharp, Jr.
United States District Judge