IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 CR 00774 |
| | ) | |
| GREGORY CHESTER, et al. | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |

## ORDER

For reasons summarized in the statement below, the Court rules as follows on the parties' motions in limine.

## STATEMENT

### I. Motions Relating to Co-Conspirator Statements

Regarding the government's *Santiago* proffer, the Court's separate written ruling addresses the government's motion to admit and the defendants' motion to exclude co-conspirator statements, *see* ECF Nos. 540, 598. In summary, the defendant's motion to exclude evidence outside the charged conspiracy [598] is denied because the *Santiago* proffer is adequate to establish the existence of the conspiracy and the defendants' membership in it, and the defendants fail to establish that all of the statements are outside of the charged conspiracy. Furthermore, the government's motion to admit the statements [540] is denied at this time because, although the proffer sufficiently establishes the existence of the conspiracy and the defendants' membership, the government has failed to identify the statements it seeks to admit with sufficient particularity for this Court to determine whether any statement was made in furtherance of the conspiracy. Therefore the government may introduce co-conspirator statements only after following the procedure previously outlined by the Court, *see* Order, ECF No. 755, and set forth in the written ruling on the *Santiago* proffer.

Regarding the admissibility of the prior statements of Keith Daniels,[1] the defendants' motion to exclude the evidence [585] is denied and the government's motion to admit the statements [590-3] is granted as set forth in the Court's separate written decision. The statements are admissible pursuant to Federal Rule of Evidence 804(b)(6). The defendants' argument that the statements are admissible only if the government can prove that Daniels was murdered by

---

[1] The government notified the defendant and the Court that it will not seek to introduce the prior statements of Anthony Bluitt pursuant to the doctrine of forfeiture by wrongdoing, and therefore the motions are moot as to his statements.

Paris Poe for the specific purpose of preventing his testimony in this case—as opposed to procure his unavailability to testify in defendant Chester's drug case or procure his unavailability as a cooperator generally—is a misstatement of the government's burden. The government has made the necessary threshold showing that Poe murdered Daniels to procure Daniels' unavailability as witness, and the forfeiture-by-wrongdoing exception therefore applies.

Finally, the government's motion to admit the recorded statements of former co-defendant Byron Brown as co-conspirator statements or statements against penal interest [590-14] is denied. Based on the information provided to date, the government has not established that Brown's statements to CI-1 were made in furtherance of the Hobos conspiracy, and they therefore cannot presently be admitted pursuant to Rule 801(d)(2)(E). Nor are the statements admissible under Rule 804(b)(3) as statements against penal interest; although such statements, if sufficiently reliable, can be used as evidence of a co-defendant's guilt, the statements at issue here do not implicate any individuals in the drive-by shooting of Anthony Bluitt or Gregory Neely, and Brown implicates only himself in the murder of Eddie Moss. The statements are therefore not admissible against any other defendant, even if their reliability were established. Whether they are reliable enough that they would admissible against Brown is a question this Court need not answer in light of his guilty plea.

## II.     Motions Relating to Admissions of Guilt by Defendants or Co-Defendants

All of the defendants move to exclude evidence of the guilty pleas and convictions of their co-defendants in this case, Byron Brown and Gary Chester [595]. (Rodney Jones also pleaded guilty but is expected to testify at trial; if he does not, this ruling applies equally to him.) The government does not intend to offer such evidence, and the defendants' motion is granted as unopposed.

The government moves to bar evidence of the defendants' acquittals, or the dismissal of charges, in prior state-court prosecutions for the same alleged criminal conduct [590-16]. That motion is granted in part. Evidence that a defendant was previously acquitted of a crime is not to be adduced by either party. References to a defendant's prior testimony in his criminal case should not refer to a prior prosecution (instead inquiring simply into prior testimony under oath). Evidence of prior acquittal may be relevant, however, to impeach a witness's testimony at this trial that differs materially from prior testimony in a manner that favors the government. But no party may elicit evidence of the prior prosecution or acquittal without fronting the question with the Court.

Three defendants move to bar the admission of their state-court guilty pleas and the associated plea colloquies as evidence in this case. The motions of Paris Poe [588], Gabriel Bush [596], and Arnold Council [639] to this effect are granted in part and denied in part for the reasons explained in the Court's prior decision on a similar motion. *See* Order, ECF No. 529. Admissions in a plea colloquy are admissible under 801(d)(2), just like any other statements by the defendant. The government may introduce the fact of the conviction and the portion of the plea colloquy transcript that contains the defendant's admission of guilt and the judge's statement of the charges (for context). The government may not, however, introduce the entire plea transcript, or the factual summaries of the defendants' criminal acts, as "admissions" of the

defendants. Regarding defendant Bush, although his plea colloquy is ambiguous as to whether he was allowed to plead guilty without admitting guilt as to five counts charged in Case No. 09 CR 10381 (especially Count I), the ambiguity does not make his statement irrelevant or otherwise inadmissible. He can explain context of these statements to the same degree he could as to any other of his statements offered against him, and therefore no unfair prejudice enures to Bush by the introduction into evidence of his statements. Moreover, to the extent that the government introduces any portion of the plea colloquy (of Bush or any other defendant), the defendant is entitled under Fed. R. Evid. 106 to have included any portion of the transcript that is necessary to provide context for his statements.

### III. Motions Relating to Law Enforcement Witnesses and Cooperators

The government's motion to bar the improper use of the reports (especially interview summaries) of law enforcement agents and officers [590-1] is denied as a categorical motion. Statements in police reports cannot be subject to a blanket ruling as to admissibility; there is simply too much variety in the content, sources, and circumstances relating to such statements. In any event, the motion is moot to the extent that the government (1) represented that it has and will continue to provide FBI and other investigative reports for its witnesses and other individuals even it believes that production is not required under the Jencks Act and (2) acknowledged that the defense may ask a witness whether he or she made a statement that is reflected in a report.

The government's motion to preclude any inquiry into complaints against law enforcement witnesses that were not sustained [590-2] is also denied as a motion in limine. The Court will not make a blanket ruling that any complaint against a police witness that was not sustained is outside the bounds of *Brady* or *Giglio*; it is the officer or agent's conduct at issue in the complaint, and the reliability of the evidence that supports the allegation, that determines admissibility as impeachment evidence, not the disposition of the complaint itself. Rule 608(b) permits cross-examination about prior conduct when there is a good faith basis to believe that the witness engaged in dishonest conduct. At what point along the spectrum between pure speculation and a conviction of guilt lies an unsustained complaint about a police officer's conduct depends on the facts and circumstances. This means a sustained complaint is not automatically admissible; it must be probative of character for truthfulness. As to what the government must disclose, it must review every complaint for whether it bears on a witness's honesty; it may not withhold any complaint merely because it was not sustained. But neither will the Court require the government to turn over every complaint against every officer-witness simply because the defense is skeptical of the government's ability or intentions to comply with its obligations. As this Court has previously cautioned, the government must adhere strenuously to the letter and spirit of *Brady* and *Giglio*, and err on the side of production. Any complaints relating to evidence that is probative of character for truthfulness should be reviewed in depth, and where the circumstances relating to the allegation suggest its reliability the government should produce that information to the defense or, at a minimum, make an *in camera* submission to the Court. The government need not disclose the total number of complaints lodged nor the number of sustained findings; these metrics are not themselves relevant.

The government's motion to bar evidence and argument about "investigative steps not taken" [590-5] is denied. Evidence relating to the quality of an investigation can be relevant to an assessment of whether the evidence presented proves a proposition beyond a reasonable doubt. Moreover, a defendant is free to offer arguments about the quality of an investigation even if he has not affirmatively adduced evidence that additional measures could have been but were not taken. That is inherent in the defendant's right to argue that the government's evidence is not sufficient to prove him guilty of a crime beyond a reasonable doubt. The Court cautions both sides, however, that this line of argument or evidence, or its rebuttal, may, in some cases, open the door to the admission of evidence that might otherwise be excluded.

The government's motion to preclude cross-examination of its witnesses about prior arrests or "bad acts" [590-12] is denied to extent it requests a blanket prohibition of cross-examination based on conduct that led to an arrest. Rule 608(b) applies and will be enforced; therefore, conduct probative of truthfulness may be inquired into on cross-examination if there is a good-faith basis, but extrinsic evidence of the conduct may not be introduced. Cross-examination pertaining to *the fact* of an arrest, as distinguished from evidence of underlying conduct is generally not permitted, but may be relevant for some purposes. Before questioning a witness about the fact of a prior arrest, a party must present the matter to the Court for permission.

### III. Other Motions to Bar or Admit Particular Evidence or Lines of Questioning

#### A. Defendants

The defendants' joint motion to bar all evidence of "any and all acts for which the Defendants have previously been prosecuted by state authorities" on the grounds that the presentation of such evidence violates double jeopardy [586] is denied. Although the defendants anticipate the demise of the dual-sovereignty doctrine, at present successive prosecutions by different sovereigns are permitted. Under the historical test re-affirmed in *Puerto Rico v. Sanchez Valle*, Illinois and the United States derive their prosecutorial powers from independent sources 136 S. Ct. 1863, 1871 (2016) ("[T]he States are separate sovereigns from the Federal Government (and from one another). To the extent there is a "sham prosecution" exception to the dual-sovereignty doctrine (the so-called *Bartkus* exception), there is no showing here that, despite cooperation, the State is using the federal government, and this prosecution, as its "tool" to avert double-jeopardy principles.

The defendants also seek to bar the government from introducing evidence that a number of the defendants (Chester, Council, Bush, Poe, and Ford) retained the same attorney (namely, Charles Murphy) to represent them in various matters. That motion [770] is denied. The government intends to introduce evidence that non-incarcerated Hobos helped pay for lawyers for incarcerated Hobos, passed messages through those lawyers, and in one instance that the lawyer (Murphy) prompted Rodney Jones to falsely recant his testimony in a case pending against Bush. The evidence the government describes is plainly relevant to show that an association in fact enterprise comprising the defendants existed, that the enterprise provided support to incarcerated members, and that it employed obstruction as a means of doing so. The defendants concerns about undue prejudice, moreover, are not well-founded. There will be no

4

argument to the effect that the retention of counsel is probative of guilt; that defendants might need to rebut evidence presented by the government is not unfairly prejudicial (that is the nature of a trial); and the concern that jurors might question whether defense counsel in this case are funded by a common source is illogical—the juxtaposition of this case, in which each defendant has (at least) two different lawyers, with evidence that previously some of the defendants used the same lawyer, would be expected to give rise to precisely the opposite inference, namely that there is no commonality to the defendants' retention of counsel.

### 1. Paris Poe

Paris Poe moves to exclude two lines of evidence: that on February 24, 2006, he kidnapped an individual identified as JH to exchange for a weapon and that on September 18, 2006, he participated in a shootout at a gas station that led to the death of a bystander. As to the first, Poe's motion in limine [589] and related motion to suppress [712] are denied. The means by which defendants procured firearms—through violence and intimidation—is front and center in the indictment and relevant to how the enterprise conducted its affairs. The alleged purpose of obtaining the gun is consistent with manner and means described in Count One, and the act does not have to be exclusively for the benefit of the conspiracy to be admissible. Moreover, there is further probative value in the presence defendants Gregory Chester and Council at the scene when Poe kidnapped JH. Further, Poe's unlawful possession of multiple firearms is plainly relevant. The evidence is not unfairly prejudicial, either. There is no evidence that the alleged kidnapping victim was a "minor" at the time (despite that characterization by Poe) or that the transaction involved especially wanton conduct or other prejudicial circumstances. The Court, however, recognizes that evidence of the procurement and use of firearms and of other violence or intimidation might become cumulative at some point. Therefore, although the Court does not bar the evidence in advance of trial, neither does it definitively rule that the evidence will be admitted.

The alternative motion to suppress the post-arrest statement after the JH kidnapping is denied because it was not untimely disclosed for purposes of Rule 16. Poe has long had notice of the arrest and subsequent state prosecution on weapons charges that stemmed from this incident. The statement (of which the defendant himself undoubtedly was aware) is contained in a police report that was timely requested but not provided by CPD. The government was not obligated to seek it from the State's Attorney, nor would it have been a foregone conclusion that the government would use the statement in its case-in-chief. The bottom line is that there is no evident prejudice where the statement was turned over one month before trial and will not be introduced for some further time. As to the putative basis for suppression—a *Miranda* violation—the government represents, and Poe has not disputed, that in connection with the resolution of his state court charges, Poe (1) stipulated that he had been *Mirandized* and (2) acknowledged picking the gun up from someone (see Resp. 4, ECF No. 731). Accordingly, suppression is not warranted.

Poe's motion to exclude evidence of a shootout at a carwash that resulted in the death of Individual KT, a bystander [640] is granted in part and denied in part. The motion is granted insofar as it seeks to preclude evidence that KT (or more generally, any bystander) was killed during this incident, as the government has not made a threshold showing that Poe killed KT, and there is evidence in the record that he was not the shooter directly responsible for that death.

KT's death has some probative value, in that it supports the brazenness and dangerousness of Poe's alleged conduct, but the risk of unfair prejudice outweighs the marginal probative value. However, the balancing changes with respect to the shootout itself. Not only is there evidence that Poe was attempting to protect defendant Gregory Chester, proving their association and suggesting a potential hierarchy; the reckless, overt violence is in keeping with nature of the charged conspiracy and is not unfairly prejudicial.

In another motion pertaining to the case against Paris Poe, the government moves to exclude (as to Poe, but also any other defendant who might raise a similar argument), evidence that the charged murders—particularly of Keith Daniels—were committed by someone else. That motion [590-6] is denied. Evidence of motive is relevant. The prosecution may present evidence that a defendant had a motive to commit a crime; so, too, in seeking to establish reasonable doubt, the defense may present evidence (not innuendo, or baseless suggestion) that someone else had a motive to commit the crime. There is no heightened burden of proof to justify the admission of such evidence in federal court. This relevant evidence, like all evidence, remains subject to exclusion under Rule 403 if its probative value is substantially outweighed by the risk of undue prejudice, but it is not *per se* irrelevant nor would it waste court time or cause juror confusion.

## 2.    Stanley Vaughn[2]

Defendant Stanley Vaughn also moves to exclude certain evidence. His motion to exclude a "Happy Birthday, Hobo" birthday card and a photo brochure from the funeral of Kristopher Daniels [593] is granted in part and denied in part. The birthday card is inadmissible hearsay as to which no exception applies. Although the government might be able to lay a foundation for the card, it fails to overcome the simple fact that the statement on the card—"Happy Birthday Ho-Bo" constitutes a factual assertion that Vaughn is a member of the Hobos and that is the reason the government seeks its introduction. The card may also show that several Hobos signed the card, showing some relationship between Vaughn and them, but the minimal probative value of that evidence (particularly in light of all of the other evidence concerning the relationships among the Hobos that will be introduced), is significantly outweighed by the risk that the jury will consider the hearsay assertion of the card that Vaughn did not just know some Hobos, but was himself a Hobo.

The funeral notice, on the other hand, does not contain hearsay statements and is admissible as to whether Vaughn associated with the Hobos. There is no risk of jurors believing Vaughn was involved in the death—the flyer says nothing about how Daniels died, and his death occurred while Vaughn was in prison. Vaughn also moves to exclude evidence or argument that

---

[2] Stanley Vaughn, who recently pleaded guilty to the RICO conspiracy, will not be tried with his co-defendants despite the need for jury findings on factors that, if found by a jury beyond a reasonable doubt, will increase his maximum sentence to life imprisonment. Nevertheless, given the nature of the broad conspiracy charged in Count One and the coordination between defendants in preparation for trial, all defendants will benefit from rulings on the motions filed by Vaughn. The Court deems his arguments adopted by the co-defendants to the extent applicable.

he was involved in the murder of tow truck driver Joe McDaniels [642], and because the government represents that it will not offer such evidence at trial, *see* Resp. 1, ECF No. 730, it is denied as moot.

### B. The Government

The government moves to admit, and one defendant moves to exclude, evidence of the defendants' so-called "lavish" lifestyles and evidence that they freely spent money without having any legitimate sources of income. The government's motion [590-11] is granted, and defendant Stanley Vaughn's [641] is denied, subject to the government's further prove-up. Evidence that the defendants freely spent money, including on luxury items, without legitimate sources of income, is relevant to prove their motive to commit the charged offenses as well as their involvement in the offenses. Under the 3-prong test of *United States v. Carrera*, 259 F.3d 818, 829 (7th Cir. 2001) this kind of evidence is admissible if (1) the evidence presented creates an inference that the defendant was involved in drug trafficking; (2) the unexplained wealth was acquired during the period in which the drug crime allegedly occurred; and (3) the government presents other evidence to support the charge, including evidence that the income was not obtained through legitimate means. The government indicates that it will meet each prong of *Carrera* through evidence presented at trial, but, as the defendants point out in their response, it has not yet done so. In particular, the government has not yet made the case that all the defendants' money is unexplained. It will be held to its burden on these issues.[3] The Court further notes that some evidence that might be probative of unexplained wealth, such as use of rental cars, may also be probative of other facts (*e.g.*, efforts to conceal identities) that would permit its admission even absent an inference that the expenditures reveal unexplained sources of income/assets.

Next, the government moves to admit the recording of a 9-1-1 call reporting the shooting of Keith Daniels [590-9], and that motion is granted. The recording of out-of-court statements by Daniels' girlfriend is admissible under the hearsay exceptions for excited utterances, Rule 803(2), and present sense impressions, Rule 803(1). The defendants offer no specific argument to the contrary; they simply note, correctly, that the theoretical underpinnings of those exceptions have been questioned. These hearsay exceptions remain the law, however, and the Court will apply them, especially here where the statements were recorded in real time and have other indicia of reliability (the declarant's description of an SUV at the scene, for example, is consistent with an SUV that was captured on nearby surveillance video). Further, this evidence is not overly cumulative; pretrial motions have made plain that the defense will seek to question the reliability and credibility of the testimony of the witness at trial; that she made her identification of the shooter unequivocally as soon as the shooting took place is strongly corroborative of her ability to discern the shooter's identity. There is, moreover, no unfair prejudice here. This is

---

[3] Defendant Stanley Vaughn and to a lesser extent the co-defendants argue that many examples of spending are not "lavish" or "exotic" and therefore are not probative. But any substantial spending (including, in Vaughn's case, for example, a $3000 down payment on a car loan) without a legitimate source of income could be probative of illegal origins. Again, however, the burden remains with the government to establish that the wealth was unexplained and ill-gotten.

evidence of a murder, so the need to prove that Daniels was dying as a result of the gunshot wounds is unavoidable; and the witness's agitation and urgent concern, rather than being unfairly prejudicial, are directly probative of the basis for admitting the statements under the hearsay exceptions.

Next, the government seeks to preclude the defendants from offering any evidence or argument pertaining to certain defenses: (1) alibis or unavailability; (2) mental defect; and (3) actual or believed exercise of public authority. That motion [590-13] is granted in part. As to the defense of alibi and/or unavailability, the government's prior written notice is adequate for purposes of Rule 12.1 of the Federal Rules of Criminal Procedure because it specifically refers to the specific events and dates set forth in the indictment. As to any such events, the defendants are not barred from presenting alibi or unavailability defenses, but they must provide the information required by Rule 12.1(a)(2) on or before 9/30/16.[4] Following any such disclosure by a defendant, the government is required to provide the information set forth in Rule 12.1(b)(1) within 14 days. The motion is granted as to the defenses of mental defect and reliance on public authority, as the defendants acknowledge that they do not intend to present defenses under Rules 12.2 or 12.3, *see* Resp. 42-43, ECF No. 643, and the motion is therefore moot as to those defenses.

Finally, the Court denies the government's motion to admit "limited" evidence of the defendants' incarceration during parts of the conspiracy's timeframe [590-4]. The motion is unopposed; both parties acknowledge that such evidence can be admissible for various purposes. But, as set forth in the parties' briefs, there should be consultation regarding the admission of such evidence before it is presented in court. A pretrial authorization to introduce such evidence is denied.

### IV. Motions Related to Trial Procedure and Conduct

The government's motion to recall its primary investigating witnesses (including, at least, Detective Brogan and Special Agent Hill) in order to present its evidence in episodic fashion [590-10], is agreed and is granted.

The government's motion to bar questioning or argument related to discovery or lost evidence [590-7] is granted in part and denied in part. Discovery issues are not for the jury, and therefore there can be no inquiry related to the government's failure to produce evidence that was requested or required to be produced. As for lost or destroyed evidence, it is a relevant topic of inquiry only to the extent the defense argues that insufficient evidence has been presented to sustain a conviction. It is not proper impeachment and does not bear on witness credibility, however, unless there is a good-faith basis to believe that the testifying witness is responsible for losing or destroying the evidence in bad faith.

The government further moves to preclude the defense from offering evidence or argument designed to elicit jury nullification [590-15] and evidence or argument related to the defendants' potential penalties or the notion that the defendants should not punished again for the

---

[4] This timeline does not apply to any incidents that were not specifically enumerated in the Superseding Indictment; as to those, if any, the government's notice would not be sufficient.

"same" crimes [590-17]. Both motions are denied. Nullification arguments are improper, as are those related to potential sentences, which are a matter for the court. There is no reason to believe that defense counsel will run afoul of these rules; if they do, however, the government must make a timely objection rather than rely on a pre-trial admonition to follow the rules.

### V.     Rulings Reserved

The parties continue to discuss the need to have two child witnesses testify at trial, and therefore defendant Poe's motion to admit their testimony [587], and the government's motion to conduct a competency hearing, [751], are held in abeyance. The motion to appoint counsel [590-8] was granted in a prior decision, *see* Order, ECF No. 629, and the witnesses are currently represented by counsel.

Finally, the government requests, and the defendants agree to, an order permitting the filing of further motions in limine [590-18]. The motion is granted, with the following caveats. All of the Court's rulings on the motions in limine are, by definition, provisional, and may be re-visited as required during trial, based on the evidence and arguments that have actually been advanced (as distinguished with those that are presently anticipated), with timely objections.[5] And any party may make additional objections not already addressed by the Court during the course of the trial. If the issues giving rise to such objections can be anticipated with sufficient context to address them in advance, the Court encourages the parties to raise such objections at the earliest opportunity, whether orally outside the jury's presence or in writing.

Date: September 6, 2016

John J. Tharp, Jr.
United States District Judge

---

[5] The Court reviewed and considered all of the parties' substantial briefing on the pretrial motions and therefore does not invite or anticipate motions to reconsider its pre-trial evidentiary rulings unless a previously unavailable argument or other new basis arises. In other words, the aggrieved party must present grounds beyond: "I *strenuously* object." *A Few Good Men*, (Columbia Pictures 1992).